Robert A. CLABAULT, Helen A. Clabault, and Stirling Corporate Services, LLC, Petitioners,

v.

CARIBBEAN SELECT, INC., Respondent.

Civ.A. No. 19680.

Court of Chancery of Delaware.

Submitted July 12, 2002.
Decided Aug. 22, 2002.

Craig B. Smith, Smith Katzenstein & Furlow, Wilmington, Delaware, for Petitioners.

## OPINION

LAMB, Vice Chancellor.

## I. INTRODUCTION

This is a post-trial decision on a petition for a court-ordered annual meeting pursuant to Section 211(c) of the Delaware General Corporation Law ("DGCL").[1] The plaintiffs, including Stirling Corporate Services, LLC ("Stirling"), are all shareholders in the defendant, Caribbean Select, Inc. ("Caribbean"), a Delaware corporation. Caribbean's certificate of incorporation was voided in 1989 for non-payment of franchise taxes. The plaintiffs wish to hold an annual meeting in order to elect directors who, then, will act to revive the corporation.

In 1990, Caribbean ceased operations and filed for reorganization pursuant to Chapter 11 of the federal Bankruptcy Code. At the time, Caribbean's common stock was publicly traded. In 1992, Caribbean's petition was converted to a liquidation proceeding under Chapter 7 of that code. The case was closed in 1994. Notwithstanding the conclusion of the liquidation proceeding, however, no one filed a certificate of dissolution with the Delaware Secretary of State. Nor was a deregistration statement ever filed with the United States Securities and Exchange Commission ("SEC"). Thus, although Caribbean is not in good standing and is not current in its reporting obligations, it retains certain attributes of a publicly traded corporation.

Stirling recently acquired shares in Caribbean and now wants to revive Caribbean under Section 312 as a step in its plan to profit by merging Caribbean with an as yet unidentified private corporation that will seek to use such a merger as a means to "go public." But Stirling is unable to satisfy Section 312(c)'s requirement that a certificate of revival be "filed by authority of those who were directors ... of the corporation at the time its certificate of incorporation expired or who were elected directors ... as provided in subsection (h) of this section." Section 312(h) authorizes Stirling to call a meeting of stockholders for the purpose of electing a new board of directors, but Stirling is unable to rely on that authority since it lacks the means to satisfy the normal quorum requirements of Section 222 of the DGCL as well as the provisions of Caribbean's bylaws. Among

---

**1.** This action is one of four similar petitions, all brought by plaintiff Stirling in conjunction with an existing shareholder of each defendant, respectively. The four actions are as follows: *Talley v. Hitech Eng'g Co.,* C.A. No. 19658 (filed May 31, 2002); *Claubault v. Caribbean Select, Inc.,* C.A. No. 19680 (filed June 4, 2002); *Lang v. Engineered Sys. & Dev. Corp.,* C.A. No. 19681 (filed June 4, 2002);

*Shaw v. Stochastic Models, Inc.,* C.A. No. 19682 (filed June 4, 2002). Each of the defendant corporations is a Delaware corporation that has had its certificate of incorporation voided either under Section 510 of the DGCL for nonpayment of franchise taxes or under Section 136 of the DGCL for failure to appoint a successor registered agent.

other things, Stirling cannot solicit proxies because it does not have and cannot prepare a current annual report for Caribbean. Thus, Stirling has petitioned for a court-ordered annual meeting pursuant to Section 211(c), which provides that those shares of stock represented at such meeting "shall constitute a quorum for the purposes of such meeting."

The record shows that the plaintiffs are stockholders of Caribbean and that Caribbean has failed to hold an annual meeting since 1990.[2] Thus, plaintiffs have made out a *prima facie* case under Section 211(c). Nevertheless, Section 211(c) rests the decision in the sound discretion of this court whether or not to order a meeting. And, while that discretion will rarely be exercised to refuse a request, the circumstances presented by this case and the three companion actions are such that the relief requested will be denied. Stirling's petition is part of a plan to make an "end run" around the federal rules and regulations governing the public trading of securities. Its plan is to use Caribbean as the vehicle for a private company to achieve the status of a "public" corporation without the burden or expense of complying with SEC disclosure requirements, in particular the need to file the necessary registration statement. Moreover, the record reflects that, while Stirling will profit substantially from this operation, there is little reason to believe that the other existing stockholders of Caribbean will enjoy a material benefit as a result. In these circumstances, the court is satisfied that it would be an abuse of discretion to permit Stirling to employ the powers of this court to achieve its questionable ends.

**2.** Since its inception, Caribbean held only one annual meeting, in 1990, at which it was unable to obtain a quorum.

**3.** Sally Fonner ("Fonner"), a principal of Stirling, and John Petersen ("Petersen"), outside securities counsel to Stirling, testified at a

## II. FACTUAL BACKGROUND

### A. Stirling[3]

Stirling is in the business of identifying bankrupt, voided corporations that were once publicly traded and, then, reviving and restructuring them into saleable public shells. Once Stirling revitalizes the voided corporation and locates a private company client, it orchestrates a reverse merger between that company and the revitalized shell. The result is that the private company goes public more quickly (and with less expense) than it could by following the normal, regulated, pathway to achieving public corporation status (for example, by engaging in an initial public offering ("IPO")). Stirling profits by charging fees to the private company and by obtaining an equity position in the surviving corporation. Stockholders of the public shell, whose stock was worthless before the merger, might realize a small benefit, but their gain is a decidedly secondary consideration.

Stirling begins this process by searching through public records relating to bankrupt, publicly reporting companies that went void in the 1980s. It screens for corporations that failed to file both a certificate of dissolution and a deregistration statement. Then, Stirling searches for a list of stockholders. If there is one, Stirling uses it to locate a stockholder willing to sell his or her shares of the company. That stockholder must have physical possession of the share certificate, because there is no way to transfer shares due to the corporation's long dormancy. To ob-

June 18, 2002 hearing regarding Stirling's operations and the public shell reverse merger process. The process described herein is simply Stirling's standard process and is not based on a specific set of facts.

tain standing as a stockholder, Stirling purchases shares by taking an assignment of all rights represented by the certificate and receiving a proxy and a power of attorney. Stirling pays $500 for one full certificate, regardless of how many shares the certificate represents. Once Stirling becomes a stockholder, it sets out to revive and restructure the corporation.

Stirling was, until recently, able to file a conditional revival, convene a meeting of stockholders to elect a board and ratify the revival. In connection with such a meeting, Stirling prepared, filed and disseminated a proxy statement with the SEC that described the election of directors, the proposed restructuring, and the current, moribund, status of the corporation (i.e., no operations or assets). At the meeting, Stirling was able to meet the quorum requirement by soliciting proxy cards from broker dealers and other nominees. In this manner, Stirling succeeded in obtaining control of the corporation's board of directors. The newly elected directors then ratified the revival.

Once Stirling gained control of the board of directors, it caused the corporation to authorize the issuance (at par value) of a majority of the voting power to itself. Stirling then used its majority voting power to restructure the corporation by performing a complicated reverse stock split to shrink the existing shareholder base to less then 10% of the authorized capital of the corporation, while leaving at least 300 round lot stockholders.[4] Stirling then ar-

ranged a merger between the shell and a private company, which paid Stirling a substantial fee. After the merger, the stockholders of the private company will own more than 90% of the outstanding shares of the surviving "public" corporation.

Stirling revived five companies in this manner before the New York Stock Exchange ("NYSE") informed it that the procedures used by Stirling in soliciting proxies from member organizations were unacceptable.[5] Due to the NYSE's interpretation of its rules, which prevented Stirling from continuing to conduct meetings as it had in the past, Stirling was forced to change its strategy and to proceed under Section 211(c).

## B. The Petition

Caribbean has no directors and, apparently, has not elected directors since 1987. Relying on Section 211(c) of the DGCL, Stirling asks the court to order an annual meeting for the purpose of electing directors so that it can continue with its plan to acquire control of Caribbean and transform it into an attractive "public shell" entity. Section 211(c) reads as follows:

> If there be a failure to hold the annual meeting or to take action by written consent to elect directors in lieu of an annual meeting for a period of 30 days after the date designated for the annual meeting, or if no date has been designated, for a period of 13 months after the

---

**4.** Stirling needs 300 round lot shareholders to continue Caribbean's status as a public filer under various securities law regulations.

**5.** The five revived companies are as follows: Webcor Electronics, Inc. (merged with Navis Technologies, Ltd. to form eNote.com, Inc.), Arnox Corporation (merged with TracyCorp. II and Telemetrix Resource Group to form Telemetrix, Inc.), BioResponse, Inc. (merged with Liberty Food Group, Ltd. to form Liberty

Group Holdings, Inc.), Marci International Imports, Inc. (merged with Wavecount, Inc. to form Dupont Direct Financial Holdings, Inc.), and Smart Games Interactive, Inc. (merged with Yifan.com, Inc. to form Yifan Communications, Inc.). (Plaintiffs' Memorandum in Support of Petition for Court-Ordered Annual Meeting ("Memorandum") at 9–10).

latest to occur of the organization of the corporation, its last annual meeting or the last action by written consent to elect directors in lieu of an annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder or director.[6]

Importantly, Section 211(c) further provides that:

> The shares of stock represented at such meeting, either in person or by proxy, and entitled to vote thereat, shall constitute a quorum for the purposes of such meeting, notwithstanding any provision of the certificate of incorporation or by-laws to the contrary.

In other words, if this court orders a meeting held pursuant to Section 211(c), Stirling will be assured of the presence of a quorum at the meeting, whether or not any other holders of Caribbean shares attend.

In support of its application, Stirling cites to a recent order entered at its instance, but without a hearing or a full factual record, requiring that an annual meeting be held for a void Delaware corporation known as Enchanted Village, Inc. ("Village").[7] Stirling also argues that the transformative process it contemplates will be beneficial to the current stockholders of Caribbean. By promising to generate a market for shares of a previously defunct corporation, Stirling presents its application as one seeking to create value for the Caribbean shareholders.

Furthermore, Stirling argues that the current economic environment is conducive to its plans ultimately to have Caribbean engage in a "reverse merger." This is so, Stirling suggests, because of the lack of activity in the IPO market over the past few years.[8] Stirling maintains that, regardless of the negative perception surrounding reverse mergers,[9] there are legitimate business reasons for a private company to merge with a public shell, including greater access to the capital markets, a quicker transaction, and ability to proceed without an underwriter. As proof, Stirling lists a few high-profile companies that became publicly traded through the reverse merger process.[10]

### III. ANALYSIS

The case law interpreting Section 211(c) strongly favors the convening of an annual meeting for the purpose of electing directors when the factual predicate defined by the statute is shown; indeed, "a stockholder's right to have a meeting convened to elect directors is 'virtually absolute.'"[11] Nevertheless, the conditional

---

**6.** 8 *Del. C.* § 211(c).

**7.** Stirling petitioned for and received a Section 211(c) order directing the call of an annual meeting of Village stockholders. That meeting was later held and was attended by a handful of Village stockholders in addition to Stirling. At the meeting, Stirling gained control of Village, immediately caused the filing of a certificate of revival for that corporation, and it is now in the process of preparing Village for sale as a public shell. The court signed the order in Village under the mistaken impression that the petition was a routine, uncontested, matter.

**8.** As proof, Stirling says that public offerings have declined from 125 IPOs in 1997 to 6 in 2001.

**9.** Fonner volunteered that the public perception of the reverse merger industry is that it is a "scum business."

**10.** These companies include Waste Management, Turner Broadcasting, and Blockbuster. Memorandum at 14.

**11.** *Saxon Indus., Inc. v. NKFW Partners*, 488 A.2d 1298, 1301 (Del.1985).

language of the statute supports the conclusion that the decision regarding whether or not to order an annual meeting pursuant to Section 211(c) is discretionary. "The use of the terms '*may* summarily order' in the statute obviously reposes a discretion in the Court to be exercised in light of the existing circumstances." [12] "The discretionary nature of § 211 with regard to whether, and when, to cause a corporation to hold an annual meeting is clear from its language." [13] Thus, there are circumstances in which the court will refuse to order an annual meeting.[14]

Stirling satisfies the two statutory elements required for *prima facie* relief under Section 211(c). Stirling located a shareholder of Caribbean and purchased shares in order to obtain standing. Additionally, it is uncontroverted that more than thirteen months have passed since the last annual meeting of Caribbean.

Still, there are powerful reasons to deny the relief requested. Caribbean is a bankrupt corporation that has not engaged in any business operations in over a decade. It has no assets or stockholders equity. Its certificate of incorporation was voided years ago by the Delaware Secretary of State for non-payment of franchise taxes. In the usual course of business, the directors of Caribbean should have filed a certificate of dissolution terminating its corporate existence and a deregistration statement terminating its status as a reporting company. And, had they done either of those things, Stirling would be unable to proceed with the reverse merger plan—a fact that Fonner acknowledged at trial.

Generally, the DGCL is an enabling statute, and neither the Secretary of State nor this court is well positioned to act or refuse to act based on the purposes for which a person chooses to organize or (in this case) revive a Delaware corporation. Nevertheless, here the record reveals that the order sought from this court is necessary to the success of Stirling's plan to circumvent important registration and disclosure elements of the federal securities laws. At least on this record, the court is unwilling to exercise its discretion to assist in the execution of a plan to achieve that result. Notwithstanding Fonner's assurances about her ambition to clean up a "scum business," this court is unwilling to use its powers to assist Stirling to profit by the sale of regulatory avoidance.

## IV. CONCLUSION

For all the foregoing reasons, the relief sought in the complaint is denied and the complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

---

**12.** *Savin Bus. Machs. Corp. v. Rapifax Corp.*, 375 A.2d 469, 472 (Del.Ch.1977) (emphasis in original).

**13.** *McKesson Corp. v. Derdiger*, 793 A.2d 385, 392 n. 21 (Del.Ch.2002).

**14.** *See, e.g., Saxon*, 488 A.2d at 1301 (describing situations in which a *prima facie* case under Section 211 was defeated).