# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted:  July 10, 2017
Date Decided:  August 4, 2017

Kevin R. Shannon, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19899

David L. Finger, Esquire
Finger & Slanina LLC
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801

Peter B. Ladig, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Jennifer C. Voss, Esquire
Skadden Arps Slate Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19899

Jeremy D. Eicher, Esquire
Cooch & Taylor, PA
1000 West Street, 10th Floor
Wilmington, DE 19801

Garrett B. Moritz, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

RE:   *In re:  TransPerfect Global, Inc.*
      Civil Action No. 9700-CB

      *Elizabeth Elting v. Philip R. Shawe, et al.*
      Civil Action No. 10449-CB

      *Shirley Shawe v. TransPerfect Global, Inc.*
      Civil Action No. 2017-0306-AGB

Dear Counsel:

This letter constitutes the Court's decision on two motions:  (1) Shirley

Shawe's motion for expedited proceedings in C.A. No. 2017-0306-AGB, which

seeks the scheduling of a meeting of stockholders of TransPerfect Global, Inc.

("TPG" or the "Company") under 8 *Del. C.* § 211 (the "Section 211 Action"), and

(2) Elizabeth Elting's motion to enforce the Sale Order entered in C.A. Nos. 9700-CB and 10449-CB,[1] and for sanctions.

Both motions were argued on June 2, 2017. At the conclusion of the hearing, the Court ordered the parties to engage in a mediation with former Chancellor Chandler and stated that it would hold the motions in abeyance pending the outcome of the mediation. The Court also made clear at that time that the sale process that has been underway since the Supreme Court affirmed the Sale Order would proceed on a parallel track.

On July 10, 2017, the mediator declared that the mediation was at an impasse, prompting the need to decide the pending motions. For the reasons explained below, the motion to enforce the Sale Order is granted but Elting's request for sanctions is denied, and the motion for expedition is denied.

## I.     Background

The background of the disputes underlying these actions has been chronicled in numerous opinions.[2] This letter decision assumes familiarity with those opinions and sets forth only those facts directly relevant to the two pending motions.

---

[1] *In re TransPerfect Global, Inc.*, 2016 WL 3949840 (Del. Ch. July 18, 2016) (ORDER).

[2] *See, e.g.*, *In re Shawe & Elting LLC*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015); *Shawe v. Elting*, 2015 WL 5167835 (Del. Ch. Sept. 2, 2015); *In re TransPerfect Global, Inc.*, 2016

TPG has 100 shares of common stock issued and outstanding, held by three individuals: Elizabeth Elting owns 50 shares; Philip Shawe ("Shawe") owns 49 shares; and Shawe's mother, Shirley Shawe ("Ms. Shawe"), owns 1 share. TPG's bylaws provide that the number of directors constituting the board (the "Board") shall be three, or such larger number as may be fixed from time to time by action of the stockholders of the Company or the Board.

Since its organization in 2007, TPG has never held an annual meeting of stockholders for the election of directors, and the stockholders of the Company have never taken action by written consent to elect directors in lieu of an annual meeting.

On December 5, 2014, in connection with resolving a prior Section 211 action brought by Elting, the Court entered an order in which all of TPG's stockholders stipulated that they "were so divided that they failed to fill the vacancy on the Board and they also failed to elect successors to directors whose terms have expired (*i.e.*, Shawe and Elting)."[3]

On August 13, 2015, for the reasons explained in a 104-page post-trial decision, the Court granted Elting's petition to appoint a custodian (the "Custodian") to sell the Company under 8 *Del. C.* § 226. The decision asked the Custodian "to

---

WL 3477217 (Del. Ch. June 21, 2016); *In re Shawe & Elting LLC*, 2016 WL 3951339 (Del. Ch. July 20, 2016).

[3] Section 211 Action Compl. Ex. B at 2.

evaluate and report back to the Court as promptly as practicable . . . on a proposed plan to sell the Company with a view toward maintaining the business as a going concern and maximizing value for the stockholders."[4]  Also on August 13, the Custodian was appointed "to serve as a third director with the authority to vote on any matters on which Shawe and Elting cannot agree and which rise to the level that he deems to be significant to managing the Company's business and affairs."[5] Before this appointment, the Board consisted of just two members since TPG's inception:  Shawe and Elting.

After issuance of the post-trial decision, the parties were afforded the opportunity to confer with the Custodian as he formulated a recommendation for conducting a sale process.  On February 8, 2016, the Custodian submitted his recommendation for a proposed plan of sale for the Company.  On June 21, 2016, after the parties were afforded the opportunity to submit briefs commenting on the Custodian's recommendation and to propose modifications to it, and after a hearing was held to consider all objections and proposed modifications, the Court issued a

---

[4] *In re Shawe & Elting*, 2015 WL 4874733, at *32.

[5] *Id*.

decision accepting the Custodian's recommendation but with certain modifications.[6]

On July 18, 2016, the Sale Order was entered.

On February 13, 2017, the Delaware Supreme Court affirmed the post-trial decision and the Sale Order.[7]

On March 12, 2017, Ms. Shawe's counsel sent Elting, Shawe, and the Custodian a proposed resolution for the Board's consideration at its next meeting for the stated purpose of breaking "the current shareholder deadlock at TPG."[8] In the proposal, Ms. Shawe asked the Board to schedule an annual meeting of the stockholders on March 27, 2017, for the purpose of electing directors. She also pledged to "vote her share at the next meeting in whatever manner is necessary to break any stockholder division that may arise in the election of directors."[9] The proposal, however, was conditioned on the Board's agreement to increase the number of directors on the Board to five, with staggered three-year terms. Elting rejected the proposal on March 13, 2017, stating among other reasons for the rejection her belief that the proposal violated the Sale Order.[10]

---

[6] *In re TransPerfect Global, Inc.*, 2016 WL 3477217.

[7] *Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

[8] Section 211 Action Compl. Ex. C at 1.

[9] Section 211 Action Compl. Ex. C at 3.

[10] Section 211 Action Compl. Ex. D.

On April 18, 2017, Ms. Shawe made a revised proposal "to prevent deadlock in the election of Company directors,"[11] which contemplated:

1. The adoption of an amendment to TPG's bylaws restructuring the Board to consist of five directors serving staggered terms, and authorizing a majority of the members of the Board to fill any vacancies that may exist from time to time;

2. The adoption of certain guidelines for significant corporate governance issues, including that any sitting director up for re-election at the next annual meeting must submit a contingent resignation that becomes effective only if the director fails to receive a sufficient number of votes for re-election and the Board accepts the resignation;

3. The issuance of the remaining authorized shares of the Company to each of the current stockholders on a pro rata basis according to their current ownership interests; and

4. The provision of a proxy allowing Elting to vote Ms. Shawe's shares solely for the election of any directors of TPG at the next five annual meetings of the stockholders.[12]

On April 19, 2017, Elting rejected Ms. Shawe's revised proposal, reiterating her belief that the proposal violated the Sale Order and stating other reasons for her rejection.[13]

---

[11] Section 211 Action Compl. Ex. J.

[12] Section 211 Action Compl. Exs. E-H. Although the proxy does not contain any language of irrevocability, Ms. Shawe's counsel represented that it would be an irrevocable proxy. Tr. Oral Arg. 37-38 (June 2, 2017).

[13] Section 211 Action Compl. Ex. K.

On April 20, 2017, Ms. Shawe filed the complaint in the Section 211 Action, asserting a single claim under 8 *Del. C.* § 211(c) to compel TPG to hold an annual meeting of its stockholders as soon as practicable. Simultaneous with filing her complaint, Ms. Shawe filed a motion for expedited proceedings.

On April 25, 2017, Elting filed a motion to enforce the Sale Order and for sanctions. On April 26, 2017, the Custodian filed a letter in response to the Section 211 Action and Elting's motion, expressing his belief that Ms. Shawe's proposal is inconsistent with the Sale Order and would seem to be futile:

> *It was my considered judgment that Ms. Shawe's proposal was not consistent with the Sale Order*, which requires me to sell the Company and, in the interim, break deadlocks between directors Phil Shawe and Liz Elting. Further, *convening an annual stockholders' meeting now also would seem to be futile* because Ms. Elting already has rejected Ms. Shawe's recent "settlement" proposal, for which convening a stockholders' meeting was allegedly the "first step."[14]

On July 16, 2017, after the mediation before former Chancellor Chandler had reached an impasse, Ms. Shawe submitted a revised proposed form of order in the Section 211 Action, where she asked the Court to order, among other things, that (1) TPG schedule and hold an annual meeting of its stockholders within 30 days of the entry of the order; (2) the Company issue the remaining authorized, but unissued shares of the Company's stock pro rata to the current stockholders before the annual

---

[14] Golden Aff. Ex. 1 (emphasis added).

meeting; and (3) "as a precondition of participation in any vote on the election of directors," five days before the annual meeting, each stockholder nominate a slate of three individuals that such stockholder commits to vote to elect to the Board.[15]

## II. Analysis

Section 211(c) of the Delaware General Corporation Law provides, in relevant part, that:

> If there be a failure to hold the annual meeting or to take action by written consent to elect directors in lieu of an annual meeting . . . for a period of 13 months after the latest to occur of the organization of the corporation, its last annual meeting or the last action by written consent to elect directors in lieu of an annual meeting, the Court of Chancery *may* summarily order a meeting to be held upon the application of any stockholder or director.[16]

Elting argues that Ms. Shawe's filing of the Section 211 Action violated paragraph 12 of the Sale Order, which provides, in relevant part, that "the stockholders [of TPG] shall . . . comply with the Order and . . . cooperate fully with the Custodian in the performance of his duties under the Order,"[17] which is to "undertake the Modified Auction . . . in an effort to sell the Company."[18] Based on

---

[15] Dkt. 19, *Shawe v. TransPerfect Global, Inc.*, No. 2017-0306-AGB (July 16, 2017).

[16] 8 *Del. C.* § 211(c) (emphasis added).

[17] Sale Order, 2016 WL 3949840, at *5.

[18] Sale Order, 2016 WL 3949840, at *2.

this alleged violation, Elting seeks sanctions against Ms. Shawe under paragraph 12

of the Sale Order, which further provides that any party may

> petition the Court to impose sanctions on any . . . stockholder . . . of the Company who (i) fails to cooperate fully with the Custodian in connection with the performance of his duties under the Order, (ii) takes or fails to take any action which impedes or undermines, or intends to impede or undermine, the sale process or (iii) otherwise fails to comply fully with the Order.[19]

In her opposition, Ms. Shawe contends that the Sale Order does not prohibit

her from filing the Section 211 Action, and that the Section 211 Action is a legitimate

offer of settlement that "can never be the basis for sanctions."[20]

Although the Sale Order does not explicitly prohibit any TPG stockholder

from filing a Section 211 action, Ms. Shawe expressly filed the Section 211 Action

"as the first step in an effort to resolve the deadlock that has resulted in a

determination that she must offer her share of stock for sale."[21]  As her counsel

further explained:  "We don't deny that the goal – the ultimate goal here is that Ms.

Shawe wants to keep her share of the Company."[22]   Thus, the clear and admitted

objective of the Section 211 Action is to remove the Custodian and to end the sale

---

[19] Sale Order, 2016 WL 3949840, at *5.

[20] Answering Br. of Shirley Shawe in Opp'n to the Mot. to Enforce the Sale Order and for Sanctions 13-15, 21-23.

[21] Section 211 Action Compl. ¶ 12.

[22] Tr. Oral Arg. 74.

process, which is inconsistent with the Sale Order's directive to "cooperate fully with the Custodian" and to not "impede[] or undermine[], or intend[] to impede or undermine, the sale process."[23]

It also is difficult to view the Section 211 Action as a genuine effort to broker a settlement. Ms. Shawe correctly points out that this Court encourages the voluntary settlement of disputes—indeed, the Court has twice *ordered* the parties to engage in mediation to facilitate a voluntary settlement, first on March 9, 2015, after trial but before the post-trial decision, and most recently on June 10, 2017.[24] Before Ms. Shawe filed the Section 211 Action, however, she knew that Elting had repeatedly rejected her purported settlement proposals, not only because of Elting's belief that they violate the Sale Order, but for other reasons as well.[25] Thus, before

---

[23] Sale Order, 2016 WL 3949840, at *5.

[24] *See* Dkt. 515, *In re TransPerfect Global Inc.*, No. 9700-CB (Mar. 9, 2015) (order appointing Custodian to serve as a mediator); Tr. Oral Arg. 83.

[25] *See* Section 211 Action Compl. Exs. D & K ("To avoid any uncertainty, however, Ms. Elting rejects the proposal. It makes no sense to create a staggered board and elect new directors when the Company will be sold in the near future pursuant to the Court's Orders. Nor is there any basis for Ms. Shawe to condition her grant of a limited, revocable proxy on Ms. Elting's agreement to a variety of qualifications, including changes to the Company's bylaws that would, among other things, create a staggered board and increase the number of directors. Further, we see no reason why the Company should issue additional stock or adopt the purported 'Guidelines,' as Ms. Shawe's proposal requires. For very good reasons credited by the Court, Ms. Elting is unwilling to agree to any continued business relationship with Mr. Shawe. Ms. Shawe's latest proposal – which could have been made at any time during the last several years but conveniently comes only after litigation has concluded – would not resolve the parties' dispute and is plainly

10

Ms. Shawe filed the Section 211 Action, she already knew that her desired use of Section 211 as a vehicle to facilitate a settlement was futile.

The relief Elting seeks for her motion to enforce the Sale Order is an order directing that TPG need not respond to the Section 211 Action unless and until Ms. Shawe first obtains relief from the Court allowing her to proceed with the litigation. The "case law interpreting Section 211(c) strongly favors the convening of an annual meeting for the purpose of electing directors when the factual predicate defined by the statute is shown,"[26] but relief under Section 211(c) is not automatic. As the Court explained in *Clabault v. Caribbean Select, Inc.*:

> the conditional language of the statute supports the conclusion that the decision regarding whether or not to order an annual meeting pursuant to Section 211(c) is discretionary. The use of the terms "may summarily order" in the statute obviously reposes a discretion in the Court to be exercised in light of the existing circumstances.[27]

In view of the specific and unique circumstances of this case, where the sale process that was set in motion *almost two years ago* is expected to conclude in the near future, it is my opinion that TPG should not be required to respond to the Section 211 Action at this stage. Ms. Shawe explicitly states that she "has not

---

not intended to do so. Rather, it is designed to delay the sale and install a mechanism for yet more litigation, risking further harm to TPG.").

[26] *Clabault v. Caribbean Select, Inc.*, 805 A.2d 913, 917 (Del. Ch. 2002) (internal quotations omitted), *aff'd*, 846 A.2d 237 (Del. 2003) (TABLE).

[27] *Clabault*, 805 A.2d at 917-18.

commenced [the Section 211] proceeding merely to enforce a technical corporate statutory right. Rather, . . . Ms. Shawe intends to end the division of the stockholders that led to the 2014 Stipulation."[28] But Ms. Shawe also has steadfastly insisted on conditioning her grant of a proxy to Elting on conditions that Elting already has rejected.[29] Thus, even if a stockholder meeting were ordered, no proxy would be granted, no deadlock would be broken, and no director would be elected. It would be a futile exercise.

In addition, the Custodian, who has over 30 years of experience in conducting M&A transactions, has expressed concern that convening a stockholders' meeting at this juncture may jeopardize the sale process:

> I also am concerned that convening an annual stockholders' meeting in the midst of the sale process *only risks injecting more uncertainty into the overall process*. Given the Shawes' prior conduct and stated intent to upend the sale process, I am cautious that the proposed stockholders' meeting – which serves no purpose given Ms. Elting's declination to effectively [undo] the Sale Order – *might represent just another avenue for delay and distraction*.[30]

I share these concerns, which are borne out by the aggressive lobbying campaign that has been undertaken against the Sale Order and the publicity concerning the

---

[28] Section 211 Action Compl. ¶ 20.

[29] *See* Tr. Oral Arg. 10-11; Dkt. 19, *Shawe v. TransPerfect Global, Inc.*, No. 2017-0306-AGB (July 16, 2017) (revised proposed form of order from Shirley Shawe).

[30] Golden Aff. Ex. 1 (emphasis added).

Section 211 Action that has been part of that effort.[31]  Indeed, Ms. Shawe's proposal

to hold an annual meeting of stockholders was the subject of articles in the press and

newspaper advertisements *before* the Section 211 Action even was filed.[32]

In short, considering the futility of any stockholder meeting that could be

ordered and the potential harm that could occur to the sale process as it nears its

completion if a stockholder meeting were to be ordered now, I conclude that TPG

need not respond to the Section 211 Action at this stage.  For these same reasons,

Ms. Shawe's motion to expedite in the Section 211 Action is denied.

I now turn to Elting's motion for sanctions, which seeks reimbursement of

reasonable fees and expenses incurred by Elting, the Company, and the Custodian

in connection with the Section 211 Action.  The imposition of sanctions for violating

---

[31] It is, of course, the right of every American citizen to criticize a judicial decision with which he or she may disagree, but it is not permissible to seek to undermine a judicially-ordered sale process through illegal means.  Just recently, the Custodian brought to the Court's attention that the sponsor of the lobbying campaign against the Sale Order, which, according to the Custodian, "admits to being funded by certain undisclosed TPG managers," "issued a press release protesting the purported involvement of a particular alleged bidder in the sale process" that the sponsor identified by name even though the identity of bidders is sensitive and confidential information.  Dkt. 1009, *In re TransPerfect Global Inc.*, No. 9700-CB (July 31, 2017) (Letter from Jennifer C. Voss requesting permission to take discovery concerning information leaks regarding the sale process).

[32] *See, e.g.*, Golden Aff. Exs. J, L, N.

a Court order is addressed to the sound discretion of this Court.[33] In the civil context, the "only purpose for finding [litigants] in contempt and assessing a penalty . . . would be to coerce them to obey the Order."[34] "In order to bring this coercive power to bear on the [litigants], this Court must first find by clear and convincing evidence that a violation of the Court Order has taken place."[35] Similarly, when sanctions are based on bad faith conduct, "the party seeking fee shifting must show by 'clear evidence' that the party from whom fees are sought has acted in subjective bad faith."[36] The bad faith ground for sanctions is not "lightly invoked"[37] and "is applied in only the most egregious instances of fraud or overreaching."[38]

Although Ms. Shawe's filing of the Section 211 Action was inconsistent with the Sale Order for the reasons explained previously, Elting has not made the requisite showing to meet the high standard for sanctions. There is no explicit provision in the Sale Order against filing a Section 211 action, and Elting has not demonstrated

---

[33] *See Dickerson v. Castle*, 1991 WL 208467, at *3 (Del. Ch. Oct. 15, 1991); *Wimbledon Fund LP-Absolute Return Fund Series v. SV Special Situations Fund LP*, 2011 WL 6820362, at *3 (Del. Ch. Dec. 22, 2011) (Strine, C.).

[34] *Dickerson*, 1991 WL 208467, at *4.

[35] *Id.*

[36] *Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 880 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012).

[37] *Auriga Cap. Corp.*, 40 A.3d at 880.

[38] *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd*, 720 A.2d 542 (Del. 1998).

that Ms. Shawe acted in subjective bad faith.  Thus, Elting's motion for sanctions is denied.

## III.    Conclusion

For the reasons stated above, Elting's motion to enforce the Sale Order is granted, her motion for sanctions is denied, and Ms. Shawe's motion for expedited proceedings is denied.

**IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm