SAVIN BUSINESS MACHINES CORPO-RATION and Savin Data Communications Corporation, Plaintiffs,

v.

RAPIFAX CORPORATION, Defendant.

Court of Chancery of Delaware, New Castle County.

Submitted June 1, 1977.
Decided July 1, 1977.

S. Samuel Arsht, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

Bruce M. Stargatt, Young, Conaway, Stargatt & Taylor, Wilmington, for defendant.

Charles S. Crompton, Jr., Potter, Anderson & Corroon, Wilmington, and Neil E. Falconer, and James T. Fousekis, Steinhart, Goldberg, Feilgenbaum & Ladar, San Francisco, Cal., appearing by stipulation for Ricoh Company, Ltd.

BROWN, Vice Chancellor.

■ Savin Business Machines Corporation and its wholly-owned subsidiary, Savin Data Communications Corporation, (hereafter "Savin"), bring this action as shareholders of the defendant Rapifax Corporation ("Rapifax") to compel a meeting of shareholders of Rapifax pursuant to 8 *Del.C.* § 211. The primary purpose of the suit is to bring about an election of directors. § 211 provides in part as follows with regard to the duty of a Delaware corporation to hold an annual meeting of its shareholders:

> "If there be a failure to hold the annual meeting for a period of 30 days after the date designated therefor, or if no date has been designated, for a period of 13 months after the organization of the corporation or after its last annual meeting, the Court of Chancery may summarily order a meeting to be held upon the application of any stockholder."

It is undisputed here that Savin is a shareholder of Rapifax and that there has been no meeting of the shareholders of Rapifax for the purpose of electing directors since December 1974, and thus for a period of time far in excess of thirteen months. Based upon these two factors alone Savin makes out a prima facie case for summary relief under the statute. *Coaxial Communications v. CNA Financial Corp.*, Del.Supr., 367 A.2d 994 (1976); *Prickett v. American Steel and Pump Corporation*, Del.Ch., 251 A.2d 576 (1969). Other related circumstances, however, have given rise to the present issue. Most significantly, Rapifax has only one other voting stockholder, namely Ricoh Company, Ltd., a Japanese corporation (hereafter "Ricoh"), and, at the time of the filing of this suit and for several months prior thereto, relations between Ricoh and Savin have been strained because of other business dealings between them

unrelated to the operations of Rapifax. Certain additional background facts are necessary to a proper understanding of the situation.

Rapifax was incorporated so as to be authorized to issue five classes of stock, designated as Class A through Class E. Class E has no voting rights. Classes A, B and C each have the right to elect three members to the board of directors. Class D has the right to elect one director. The board of directors can consist of no more than ten members. It takes 70 per cent of the board to constitute a quorum. It also requires a 70 per cent vote of the whole board to transact certain business. The corporate charter provides that in the event that no shares of a particular voting class stock have been issued, the directors who would have otherwise been elected by such class "shall be elected by the Board of Directors, subject to the right of the holders of such class of voting stock to remove and replace such director or directors upon the issuance of shares of such class."

At present, Savin owns the Class A stock and therefore has the right to elect three directors. Ricoh owns the Class C stock and also has the right to elect three directors. The only other stock outstanding is preferred stock owned by CBS, Inc., which, although it is convertible to Class D stock, has no voting rights. No Class B or Class D stock has been issued. Thus, only Savin and Ricoh can vote for directors and between them, as of the time of suit, they could technically elect only six out of ten— or one short of a quorum—at an annual meeting.

At the only previous shareholders' meeting of Rapifax, held in December 1974, the same situation prevailed. However, because of a substantial economic investment being made in Rapifax by Ricoh at the time, Savin gave Ricoh its proxy. Consequently, at that meeting, Ricoh elected six directors who, in turn, met and selected four other directors who were naturally aligned with the interests of Ricoh. This composition of all ten directors being those of Ricoh continued until March 1977, at

which time Savin expressed a desire for representation on the board. Ricoh agreed and three directors designated by Savin replaced three Ricoh directors, leaving Ricoh with a seven to three advantage. This represented the composition of the board at the time of suit. This latter action was also accomplished informally through correspondence and without the benefit of formal notice and the holding of a shareholders' meeting as such.

In April 1977, Ricoh made an offer to purchase an aggregate of 1,280,000 shares of Rapifax stock, including Class B and Class D stock as well as additional shares of Class C. Such an issue of stock to Ricoh would, under the charter, give it the right thereafter to elect three Class B directors and the one Class D director in addition to its existing right to elect the three Class C directors. Thus, if the offer was accepted, Ricoh would thereafter acquire the right to elect seven directors against the three of Savin and thus would it acquire permanent control of the Rapifax board. There are reasons and factors involved which could indicate justification for the acceptance of such an offer by the existing Ricoh—controlled board. Savin thinks otherwise. However, in view of the narrow issue here being decided, it is unnecessary to delve into them at this time.

At meetings of the Rapifax board in April and early May the three Savin directors sought to have an annual shareholders' meeting called forthwith. This proposal was defeated by the Ricoh directors who proceeded to schedule the annual meeting for July 19, 1977. In May Savin initiated this suit in furtherance of its effort to have this Court order a shareholders' meeting so as to bring about an election of directors prior to the deadline given by Ricoh to Rapifax to accept its stock purchase offer.

Prior to Savin's April demand for a meeting, however, there were two other developments which must be given consideration. First of all, in December 1976, Savin requested of Rapifax that a shareholders' meeting be scheduled and accordingly, on January 3, 1977 the Rapifax board adopted

a resolution calling for an annual meeting to be held on January 27. Savin was advised of this informally on January 5. However, this date proved unsuitable to Savin because its representatives who would attend the meeting were to be involved in other matters on the proposed date. Savin suggested the week of February 21 as a satisfactory alternative. As a result the proposed January 27 meeting was cancelled and a new date of February 24 was established by the Rapifax board. This time a formal notice was sent out.

Prior to the meeting date, however, other discussions took place between Ricoh and Savin and again the shareholders' meeting was postponed. There is some difference of opinion as to how this came about. Ricoh asserts that the meeting was again continued at the request of Savin. Savin does not totally dispute this, but suggests that because the two were in the process of attempting to resolve their differences on other matters it was insinuated by Ricoh that they should avoid precipitating any untimely hostilities concerning their respective interests in Rapifax. Whatever the subjective motivations of the parties, the documentary materials would seem to clearly indicate that the meeting was again postponed to accommodate Savin and that this decision to postpone met with the approval of Savin.

Thus, to put the matter in proper perspective, Savin seeks to compel an immediate shareholders' meeting pursuant to 8 *Del.C.* § 211 after having passed up two such meetings scheduled at its request by the Rapifax board and in the face of a now-scheduled meeting for July 19. As such, Savin's suit is not so much to compel a meeting of shareholders as it is to advance a scheduled meeting of shareholders after having willingly passed up on two previous occasions what it now seeks the Court to summarily order.

Savin takes the position that under the statute its right to have an immediate shareholders' meeting is *absolute*, regardless of anything that has previously transpired. In other words, it contends that it

is a shareholder, that there has been no annual meeting for more than thirteen months, and that consequently, since the purpose of the statute is to guarantee to a shareholder the right to have a say in determining the persons who will guide the fortunes of his corporate investment, its willingness to forego earlier meetings cannot defeat its statutory right to compel a meeting now that it really insists upon one. In support of this it relies on the language of *Coaxial Communications, Inc. v. CNA Financial Corp., supra,* at 367 A.2d 998 that

> "Given the importance of an annual meeting of stockholders in the administration of corporate affairs, 'prompt' relief is essential under § 211."

and also the statement in *Tweedy, Browne & Knapp v. Cambridge Fund, Inc.,* 318 A.2d 635, 637 that

> " . . . where more than thirteen months have elapsed without a meeting of shareholders to elect directors and application is made by a shareholder for Court intervention because of this, the Court has a duty to make sure that such a meeting and election take place *as promptly as possible,* and normally this can only be guaranteed by the entry of an order fixing a definite date for the event to take place." (Emphasis added.)

While it is true that § 211 mandates that an annual election of directors shall be held and empowers this Court, on the application of a shareholder, to summarily order a meeting of shareholders for this purpose in the event that the corporation has failed in timely fashion to hold one on its own, the use of the terms *"may summarily order"* in the statute obviously reposes a discretion in the Court to be exercised in light of the existing circumstances. The timing of the mandated meeting clearly falls within this discretionary authority. See 8 *Del.C.* § 211(c); *Tweedy, Browne & Knapp v. Cambridge Fund, Inc., supra.* Thus, while the right of a shareholder to compel an annual meeting under § 211 may be virtually absolute, he has no similar right to insist that it be held at any particular time. This latter is a decision for the Court.

■ Here, if discretion is to be meaning-fully exercised, the Court should not close its eyes to the fact that Rapifax has only two voting stockholders, both of which are themselves sizable business entities, and which are in the throes of disputes over other matters. Nor in this context should it overlook the fact that previous opportuni-ties for a shareholders' meeting between the two have been willingly passed up by Savin and that the purpose of the present suit is not to compel the Rapifax board to call a shareholders' meeting, but to advance the one designated prior to the suit for reasons felt important by Savin. Finally, it must be remembered that Savin, as the owner of the Class A stock, can elect no more than three directors at the next share-holders' meeting and that it presently has three directors on the board who were placed thereon in March with Ricoh's con-sent and cooperation.

In view of these circumstances, I am sat-isfied that the scheduled meeting of share-holders called for July 19 should be permit-ted to stand and that the application of Savin to have this Court summarily order a meeting forthwith should be denied. If Savin wishes to challenge actions taken by the present Rapifax board of directors dur-ing the interim, other appropriate remedies are available to it. I ask counsel to agree upon and submit an appropriate form of order.