# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE: HAWK SYSTEMS, INC.,     )
a Delaware corporation     )    **C.A. No. 2018-0288-JRS**
                                    )

## MEMORANDUM OPINION

Date Submitted: June 18, 2019
Date Decided: September 4, 2019

Carl D. Neff, Esquire and Kasey H. DeSantis, Esquire of Fox Rothschild LLP, Wilmington, Delaware and Manuel A. Mesa, Esquire and Matthew Carcano, Esquire of Mesa & Pepin, LLC, Miami, Florida, Attorneys for Petitioner Mark J. Spanakos.

Neil R. Lapinski, Esquire and Phillip A. Giordano, Esquire of Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware, Attorneys for Respondents Robert Pate, John Pate, Mary Ellen Pate, Edward Sebastiano and Joseph Garofalo.

**SLIGHTS, Vice Chancellor**

Legend has it that if you ask a Mainer to give directions when he does not know the way, he will reply, "You can't get there from here."[1]  Petitioner, Mark Spanakos, asks this Court to declare that he is the majority stockholder, sole director and chief executive officer of Hawk Systems, Inc. ("Hawk Systems" or the "Company").  His request comes in the wake of allegations the Company's former managers engaged in rampant fraud and mismanagement at the expense of all other stockholders, and Spanakos in particular, that caused the Company to default on its obligations and ultimately go dark.  In the midst of the chaos, the Company's insiders bought and sold stock for little or no consideration and with no regard for corporate formalities.  The Company's stock ledger is a mess and its stock transfer agent has resigned.  This all has left a splintered trail of evidence regarding stock ownership that, in its present form, cannot be reconstituted.  Consequently, while Spanakos set out in this litigation to reach Hawk Systems' seat of control, given the current state of the evidence, he "can't get there from here."

The question of Spanakos' control over Hawk Systems has bubbled to the surface in derivative litigation Spanakos initiated in Florida against several of the alleged wrongdoers.  Spanakos has sought to have the Company assume control of the derivative claims and the defendants there have responded by challenging his

---

[1] Athenians are known to reply the same.  Berry, Buck, Mills, Stipe, *You Can't Get There From Here* (Universal Music Publ'g. Gp. 1985).

authority to act for the Company.[2] The Florida court determined that only this Court could adjudicate whether Spanakos' claim that he controls Hawk Systems is valid, so he initiated this action under 8 *Del. C.* § 225 to obtain that declaration.

Spanakos' claims here hinge on two Orders issued by state courts in Florida in resolution of direct claims he initiated against some of the alleged bad actors within the Company. The Florida Orders, he alleges, make clear that, as a result of defaulted debts and proven wrongdoing, Spanakos now owns a majority of Hawk Systems' issued and outstanding voting stock, or at least has the right to vote a majority of the Company's common shares. As explained below, the Orders do not clearly say what Spanakos says they say, nor has Spanakos sought to clarify, enforce (or execute upon) them in Florida in a manner that would allow this Court to declare that he owns or controls the disputed shares. And, of course, the Company's stock ledger does not support his claim because that record has been neglected for years.

Spanakos has cause to be frustrated. He invested real money in Hawk Systems and his investment has been squandered. His desire to assume control of the Company and to seek accountability for what has happened to it is laudable. But he can't get there from here. The basic elements of the map to his desired destination

---

[2] It appears the Florida derivative defendants are also challenging whether Spanakos has properly asserted derivative claims for the Company, thereby making the question of Spanakos' authority to cause the Company to assert the claims directly all the more consequential.

2

are missing. Those elements, if they exist, are in Florida. Specifically, the Florida courts can clarify the Hawk Systems shares Spanakos has acquired through his litigation efforts in Florida and can provide a facility to execute on those Orders. Once that clarity has been given, he can return to this Court with a clearer path to the relief he seeks. For now, I must enter judgment for Respondents.

## I. BACKGROUND

The Court held a one-day trial during which it received 82 trial exhibits, including 9 lodged depositions, and heard live testimony from two witnesses. I have drawn the facts from the stipulations of fact entered in advance of trial, the testimony and exhibits presented during trial and from reasonable inferences that flow from that evidence.[3] The following facts were proven by a preponderance of the evidence.

### A. Parties and Relevant Non-Parties

Petitioner, Mark Spanakos, is a Florida resident and former director of Hawk Systems.[4] Nominal respondent, Hawk Systems, is a Delaware corporation based in Palm Beach County, Florida. When it was operational, Hawk Systems designed fingerprint authentication and identification technology for various applications.

---

[3] Citations will be in the following format: "PTO ¶ __" shall refer to stipulated facts in the pre-trial order; "Trial Tr. ([Name]) __" shall refer to witness testimony from the trial transcript; "JX__" shall refer to trial exhibits using the JX-based page numbers generated for trial; "[Name] Dep. __" shall refer to witness testimony from a deposition transcript lodged with the Court for trial.

[4] Trial Tr. (Spanakos) 5:13–17, 101:23–102:1.

It is the product of a 2009 reverse merger between Hawk Acquisition Corp. (as a subsidiary of Hawk System's predecessor, Explorations Group, Inc. ("EXGI")) and non-party, Hawk Biometric Technologies, Inc. ("Hawk Biometric").[5] Respondents, Robert Pate, John R. Pate, Edward Sebastiano, Mary Ellen Pate and Joseph Garofalo, are purported stockholders of Hawk Systems.[6]

## B. The Evolution of Spanakos' Interests in Hawk Systems

In 2006 and 2007, Spanakos made a number of investments in Hawk Biometrics of Canada, Inc. ("Hawk Canada") in exchange for four million shares of common stock.[7] Eventually, Hawk Canada re-domiciled in the United States as Hawk Biometric and Spanakos' interest in Hawk Canada was converted in a 1:1 exchange to common stock in the U.S. company.[8] In February 2009, Hawk Biometric went public through a reverse merger with EXGI, a publicly traded company that changed its name to Hawk Systems after the merger.[9] As a result of the merger, Hawk Biometric became a wholly owned subsidiary of Hawk Systems.[10]

---

[5] JX 69.

[6] D.I. 12–15.

[7] PTO ¶ 1.

[8] JX 70; Trial Tr. (Spanakos) 13:1–16.

[9] JX 9; JX 49.

[10] JX 9; JX 11.

Hawk Biometric Class A and B common stock was converted into shares of Hawk Systems Series B Preferred Stock and then into shares of Hawk Systems common stock.[11] Spanakos' four million shares of Hawk Biometric stock, therefore, converted into eight million shares of Hawk Systems common stock.[12]

## C. The Coriaty Note

Prior to the reverse merger, Spanakos loaned $1.5 million to David Coriaty, the founder and majority stockholder of Hawk Canada, as evidenced by a promissory note dated June 29, 2007 (the "Coriaty Note").[13] To secure the Coriaty Note, Coriaty granted Spanakos a security interest in Coriaty's 3,000,000 Class A "Preferred" shares of Hawk Canada, and voting rights associated with all of Coriaty's shares, totaling 15,000,000 class A "Preferred" shares (the "Coriaty Security Agreement").[14] Coriaty also agreed that "[f]urther collateral (Patents) will be pledged in exchange for the above collateral once Hawk Biometrics of Canada is domesticated into the US."[15] After receiving the funds, Coriaty loaned the $1.5 million to Hawk Canada, and the board of directors of Hawk Biometric committed

---

[11] JX 9; JX 11.

[12] PTO ¶ 6; JX 50.

[13] PTO ¶ 7; JX 5; Trial Tr. (Spanakos) 10:14–15, 14:6–13.

[14] PTO ¶ 8; JX 5.

[15] JX 5.

to repay Spanakos on the Coriaty Note in a board resolution dated January 6, 2009 (the "Coriaty Resolution").[16] The Coriaty Resolution, however, does not purport to transfer Coriaty's pledged collateral to Hawk Biometric, nor does it commit the Company to assist Spanakos in securing Coriaty's pledged collateral in the event Coriaty and the Company both default on the loan.

## D. Hawk Systems Defaults on Obligations and Loses Its Charter

In 2009, the Company stopped making payments on Spanakos' loan.[17] This caused Spanakos to worry that all was not well within Hawk Systems. Specifically, Spanakos began to suspect that Company directors were diverting Company funds to pay personal expenses, a fact that was particularly troubling since the Company had yet to produce a single product with its patented "biometric" technology.[18] Even

---

[16] PTO ¶ 9; JX 7; JX 12. Specifically, the Coriaty Resolution states:

> RESOLVED: The Company shall repay its $1.5 million debt to Mr. Coriaty either with the proceeds of a bridge loan, profits made after going public, or a combination of both. The Company acknowledges that Mark Spanakos is the lender of the $1.5 million borrowed by Mr. Coriaty, and that said loan is secured by Mr. Coriaty's interest in the Hawk patents. The Company contemplates securing a bridge loan in the amount of $3 million for the purpose of repayment of the debt and for working capital. Therefore, it is, FURTHER RESOLVED, that the Company shall payoff the $1.5 million loan directly to Mr. Spanakos, and that said debt shall be paid before any additional bonuses, compensation or other shareholder distributions are made. It will look to bridge loan proceeds first before Company profits in order to repay the debt. (JX 5).

[17] Trial Tr. (Spanakos) 190:11–13.

[18] Trial Tr. (Spanakos) 22:4–20; JX 28 at ¶¶ 9.l, 10.a.

6

though the Company had no marketable product, its insiders continued to tout its prospects in what Spanakos now alleges was a "pump and dump" scheme whereby Hawk Systems' insiders pumped the stock price with false information and then dumped their holdings.[19] At the end of the scheme, the insiders allegedly raised millions of dollars in investor funding, reported sales of $5,575 and booked expenses and losses of approximately $22 million.[20] All the while, members of the Hawk Systems board of directors allegedly issued shares of Company stock to insiders for little or no consideration and with no regard for corporate formalities.[21] Eventually the Company defaulted on its obligations to Delaware and its charter was declared void.[22]

### E. Spanakos Attempts to Revive the Company and Assert Control

Between 2010 and 2012, Spanakos filed several actions against Hawk Systems and its directors. On October 28, 2011, Spankos initiated a direct action against Hawk Systems and Coriaty in the Florida 15th Judicial Circuit Court for Palm Beach County to enforce the Coriaty Note and foreclose on the Coriaty Security

---

[19] JX 28 ¶ 10.a.

[20] JX 28 ¶ 9.k.

[21] *Id. See also* John Pate Dep. 14:10–13 (testifying that his father, Respondent, Robert Pate, was given 100,000 shares of stock for no consideration, and then gave his children John and Martine Pate 25,000 shares each).

[22] Trial Tr. (Spanakos) 61:11–12; JX 46.

7

Interest (the "Coriaty Action").[23] On December 23, 2014, the Florida court entered

a Partial Final Judgment in favor of Spanakos and against Hawk Systems and Hawk

Biometric (the "Partial Final Judgment").[24] While the order states that "execution"

on the "Final Judgment of foreclosure" shall "issue," there is no evidence that any

further steps to execute the judgment have been taken.[25]

Spanakos also commenced a direct action against former Hawk Systems

director, Edward Sebastiano, again in the Florida 15th Judicial Circuit Court for Palm

---

[23] PTO ¶ 12 (*Spanakos v. Hawk Sys., Inc. et al.*, Case No. 50 2011 CA 16775 XXXX MB AE); Trial Tr. (Spanakos) 41:20–42:3; JX 37.

[24] PTO ¶ 13; JX 38. Spanakos maintains in his post-trial brief that he obtained a judgment against Coriaty as well. Pet'r Post-Trial Op. Br. at 14. But that is not what the Order says. *See* JX 38. The Partial Final Judgment states:

> Final Judgment is hereby entered against Defendants Hawk Systems, Inc. and Hawk Biometric Technologies, Inc. (collectively "Defendants") and in favor of Plaintiff Mark Spanakos ("Plaintiff"), in the amount of $3,096,782.00, for which sums let execution issue. Final Judgment of foreclosure of the security interests held by Plaintiff, as of the date of default, November 1, 2008, in 6,000,000 Class A "Preferred" shares of stock in Defendant Hawk Systems, Inc., and in voting rights over 30,000,000 Class A "Preferred" shares of stock in Defendant Hawk Systems, Inc. (including all stock acquired in any fashion thereafter) is Granted in favor of Plaintiff, for which amounts let execution issue. U.S. Patent 6,927,668 and Pending U.S. Patent Application SN 11/622,428, are hereby vested in Plaintiff to U.S. Patent 6,927,668 and Pending U.S. Patent Application SN 11/622,428. Re: Patent 6,927,668 and Pending U.S. Patent Application SN 11/622,428, these defendants' claims, interests are hereby expressly extinguished. JX 38.

[25] It is clear from the Order, including the handwritten notes of the judge who entered it, that Spanakos proposed the Order, the presiding judge modified it and then entered it. JX 38.

Beach County (the "Sebastiano Action").[26] On June 1, 2017, Spanakos obtained a Writ of Execution against Sebastiano and levied upon his goods and chattels, including three stock certificates totaling 8,162,283 shares of Hawk Systems common stock.[27]

On July 13, 2010, Spanakos brought a direct and derivative action in the Florida 15th Judicial Circuit Court against several alleged Hawk Systems insiders, alleging, among other things, unjust enrichment and fraud, and seeking judgment against the defendants for compensatory damages (the "Derivative Action").[28] On December 15, 2016, the Florida court entered summary judgment against 22 individuals and entities with respect to Spanakos' claims of unjust enrichment (the "Summary Judgment Order").[29] The implementing orders for each defendant make clear that summary judgement was entered "as to liability only."[30] Indeed, "[t]he Court reserve[d] entering a final judgment against defendant(s) . . . on

---

[26] PTO ¶ 14 (Case No. 50-2013-CA-017439-XXXX-MB).

[27] PTO ¶ 15; JX 25; JX 53.

[28] PTO ¶ 10 (*Spanakos v. Hawk Sys., Inc. et al.*, Case No. 50 2010 CA 017971 XXXX MB); JX 33 at 81, 89–92. The parties have called this action the Derivative Action (PTO ¶ 10), but it appears Spanakos asserted both direct and derivative claims.

[29] JX 45. As best I can tell, Spanakos obtained partial summary judgment on direct (not derivative) claims against the individual defendants named in the judgments.

[30] JX 45.

damages subject to an appropriate motion regarding the same."[31] To date, Spanakos has not brought the "appropriate motion" to obtain final judgments as directed by the Florida court.

As for Spanakos' derivative claims (the "Derivative Claims"), it appears the defendants challenged his standing to bring those claims, raising, among other issues, his failure to plead demand futility.[32] In response, Spanakos moved to realign the parties on May 26, 2015.[33] After several hearings, the Florida court determined a Delaware Court should decide the number of Hawk Systems shares controlled by Spanakos and whether Spanakos is a validly elected director and officer of Hawk Systems.[34] The Florida court entered an order to that effect on March 14, 2018.[35]

As he prosecuted his claims against various Company insiders in court, Spanakos purported to take several steps outside of court to assert control over the Company as majority stockholder and sole director. In March 2015, he executed a

---

[31] JX 45.

[32] PTO ¶ 25.

[33] PTO ¶ 23. That same day, Spanakos executed two resolutions (the "2015 Corporate Resolutions") purporting to (i) realign the parties to name Hawk Systems as a plaintiff, (ii) authorize the Company to assert the Derivative Claims as direct claims, and (iii) demand that all books and records of the Company and of the Company's stock transfer agent, Olde Monmouth Stock Transfer Company, relating to the Company be turned over to his counsel. PTO ¶¶ 19–20.

[34] PTO ¶ 26.

[35] *Id.*

"Written Consent of Majority Stockholder in Lieu of an Annual Meeting Pursuant to Sections 228(e), 211(b), and Other Provisions of the General Corporation Law of the State of Delaware" (the "2015 Written Consent").[36]  Through the 2015 Written Consent, Spanakos purportedly reduced the Hawk Systems board of directors to one member and then appointed himself as the sole director, chairman of the board and CEO of the Company.[37]

On February 1, 2017, Spanakos caused to be filed a certificate of revival of Hawk Systems' charter, which, as noted, had become void in March 2013 for failure to pay taxes and fees.[38]  In April 2018, Spanakos ostensibly amended the Company's bylaws to reduce the Hawk Systems board of directors to one and to ratify his actions with respect to the Derivative Claims (the "2018 Stockholder Consent").[39]  Spanakos then purported to elect himself as chairman of the board, CEO, treasurer and secretary and then purported to ratify all of his prior actions (the "2018 Director

---

[36] PTO ¶ 18; JX 39.

[37] JX 39.

[38] JX 46.

[39] PTO ¶ 27; JX 63.

11

Consent").[40]  On April 20, 2018, as the alleged sole director, Spanakos purported to nullify 20,811,000 shares of Company common stock.[41]

As of August 22, 2018, Spanakos had acquired an additional 6,443,909 shares of Hawk Systems stock and voting rights in 1,271,713 shares through purchases on the open market and a transfer from his sister, Athena Carlone.[42]  In total, including shares he allegedly secured through litigation, Spanakos claims to own 22,606,192 shares and to control voting rights in 46,115,140 shares,[43] as reflected in the chart below:

Remainder of page intentionally left blank

---

[40] JX 63.

[41] PTO ¶ 30.

[42] JX 40; JX 48; JX 65.

[43] PTO ¶ 13.

| | Source of Shares | Amount of Shares | Date Shares Acquired | Evidence Reflecting the Shares |
|---|---|---|---|---|
| **Physically Controlled by Spanakos** | Initial Investment | 8,000,000 | 2006 | Stock Certificate of Mark Spanakos (JX 50) |
| | Additional Purchased | 2,015,554 | October 1, 2015 | Account statement of Gary Goldberg Financial Services, dated May 2017 (JX 40) |
| | Sebastiano Action | 8,162,283 | August 17, 2017 | Writ of Execution and Bill of Sheriff's Sale (JX 53); Sebastiano's Stock Certificates (JX 25) |
| | Transferred from Athena Carlone | 4,428,355 | February 2017 | Account statement from Scottrade, dated February 24, 2017 (JX 48) |
| | **TOTAL** | **22,606,192** | | |
| **Voting Rights Controlled by Spanakos** | Coriaty Action – Partial Final Judgment | 36,000,000 | December 23, 2014 | Coriaty Note and Security Agreement (JX 5) <br><br> Partial Final Judgment (JX 38) |
| | Additional Coriaty Shares | 8,843,427 | December 23, 2014 | Partial Final Judgment (JX 38) 7/7/2010 Letter from M. Diamant to Olde Monmouth stock Transfer Inc. (JX 23) Olde Monmouth Stock Transfer Transaction Journal, dated Oct. 21, 2015 (JX 21) |
| | Voting Rights to Shares of Athena Carlone | 1,271,713 | August 22, 2018 | Spanakos Aff., ¶ 12; Shareholder Proxy (JX 65) |
| | **TOTAL** | **46,115,140  [Collective Total of 68,721,332]** | | |

## F. The Stock Ledger

The Company's most recent stock ledger shows Spanakos as record holder of approximately 8 million shares of Hawk Systems stock.[44]  This equates to roughly 8.4% of Hawk Systems' outstanding shares.[45]  But the stock ledger is not accurate,[46]

---

[44] JX 49.  Beyond a reference to "Restricted," it is not clear from the stock ledger what class of securities Spanakos holds.

[45] JX 49; JX 51; JX 54 (Deposition, Jeffrey English) 116:12–15.

[46] Trial Tr. (Spanakos) 34:7–14; Trial Tr. (Kennedy) 220:1–23; Pate Dep. 14:10–13; JX 12; JX 13; JX 16.  Petitioner presented expert testimony from Kara Kennedy on issues relating to stock ledgers and the role of stock transfer agents.  I found her testimony on these

and the Company's stock transfer agent, Olde Monmouth Stock Transfer Company ("Olde Monmouth"), has resigned.[47]

### G. Procedural History

Petitioner filed this action on April 17, 2018, seeking declarations that he controlled Hawk Systems and had taken appropriate steps to secure and exercise that control upon acquiring majority ownership of the Company's outstanding voting stock. Alternatively, he sought to compel an election of directors.

On May 30, 2018, Neil R. Lapinski, Esq. entered his appearance and filed a letter with the Court in which he explained that he represented several clients not named in the action who, nevertheless, opposed the relief Spanakos was seeking (the "Letter").[48] A number of shareholders and non-shareholders then contacted the Court to join in the Letter and asked to be heard.[49] Spanakos moved to strike the

---

subjects credible. She also provided opinions regarding the scope, meaning and validity of Spanakos' various actions taken as purported majority owner of Hawk Systems, *e.g.*, Trial Tr. (Kennedy) 255:22–256:1, and the steps the Court may take under the DGCL to fill the holes in Spanakos' claim of majority ownership, *e.g.*, Trial Tr. (Kennedy) 239:5–20. As to these subjects, and others, Ms. Kennedy opined well beyond her expertise and beyond the bounds of permissible expert testimony.

[47] JX 54 (English Dep.) 162:20–25.

[48] D.I. 6.

[49] Non-shareholders seeking to be heard included Liebman, Goldberg & Hymowitz LLP, Elliot Goldberg, and Michael Diamant. D.I. 5.

Letter.[50]  Eventually, Spanakos agreed to withdraw his motion to strike in exchange for the non-parties' agreement not to intervene in the litigation.[51]  Mr. Lapinski then entered his appearance for Respondents, Robert Pate, John Pate, Edward Sebastiano, Mary Ellen Pate and Joseph Garofalo, all of whom purport to be Hawk Systems stockholders.[52]   The Court held a one-day trial on September 17, 2018.[53]

## II.  ANALYSIS

Spanakos seeks declarations under 8 *Del. C.* § 225(a) that he controls a majority of the voting shares of Hawk Systems—specifically, 68.7 million of approximately 75 million issued shares—and that he is the validly elected, sole director and officer of Hawk Systems.  To obtain these declarations, Spanakos "bears the burden of proving by a preponderance of the evidence that [he] is entitled to relief."[54]  Section 225 contemplates summary proceedings that "should be limited in

---

[50] D.I. 10.

[51] D.I. 26, 40, 42.

[52] D.I. 30.  From the docket, it does not appear that Respondents ever actually "responded" to the Petition.

[53] On February 26, 2019, Petitioner filed, and the Court granted, a Motion to Supplement the Record with testimony from stockholder John Pate.  D.I. 64.

[54] *Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d 437, 453 (Del. Ch. 2012) (noting that in a Section 225 action, "the Court exercises jurisdiction only for the limited purpose of determining the corporations *de jure* directors and officers" and emphasizing that the plaintiff bears the burden of proof) (quotation omitted).

15

scope to determine 'those issues that pertain to the validity of the acts [taken to secure plaintiff's position on the board].'"[55]

As an alternative to his requested relief under Section 225, Spanakos seeks an order compelling the Company to hold an annual election of directors under 8 *Del. C.* § 223(a). Section 223(a) provides, in part:

> If at any time, by reason of death or resignation or other cause, a corporation should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the certificate of incorporation or the bylaws, or may apply to the Court of Chancery for a decree summarily ordering an election as provided in § 211 or § 215 of this title.[56]

Apparently recognizing that an election held in accordance with the Company's current stock ledger likely would not go well for him, Spanakos has advanced a request for relief not stated in his Petition that essentially would have the Court appoint a custodian to reconstitute the Company's stock ledger and then oversee the election to ensure that the Company's stock is voted in accordance with the newly revised ledger.[57]

---

[55] *Boris v. Schaheen*, 2013 WL 6331287, at *12 (Del. Ch. Dec. 2, 2013) (quoting *Genger v. TR Inv'r, LLC*, 26 A.3d 180, 199 (Del. 2011)).

[56] 8 *Del. C.* § 223.

[57] PTO, Pet'r Statement of Relief Sought, ¶¶ iv, v.

Regardless of whether the Court proceeds under Section 225 or Section 223, the Court is empowered "to determine the right and power of persons claiming to own stock and . . . to vote at any meeting of stockholders or members."[58] In exercising that power, "the court may determine any legal or factual issue, the resolution of which could affect the outcome of a corporate election or of any other stockholder vote. That includes deciding beneficial ownership."[59]

## A. Petitioner Has Not Proven He Is the Majority Stockholder or Sole Director of Hawk Systems

Spanakos maintains he has acquired a majority of Hawk Systems' shares of voting stock through a variety of means. There appears to be no controversy that Spanakos' initial investment in Hawk Canada resulted in his ownership of 8 million common shares of Hawk Systems.[60] He then acquired an additional 2,015,554 shares on the open market,[61] 8,162,283 shares through a writ of execution following his success in the Sebastiano Action,[62] and 4,428,355 shares through a transfer from

---

[58] 8 *Del. C.* § 227.

[59] *Zohar II 2005-1, Ltd. v. FSAR Hldgs., Inc.*, 2017 WL 5956877, at *25 (Del. Ch. Nov. 30, 2017) (internal quotations omitted).

[60] JX 50.

[61] JX 40.

[62] JX 25.

17

his sister, Athena Carlone.[63]  All told this amounts to 22,606,192 shares, which the parties agree is less than a majority of the outstanding voting shares.

## 1. The Partial Final Judgment

To reach controlling stockholder status, Spanakos must rely on the Partial Final Judgment in the Coriaty Action and the Summary Judgment Order entered in the Derivative Action.  The Partial Final Judgment awarded Petitioner $3,096,782.00 in damages, certain Hawk Systems patents and pending patents, and:

> Final Judgment of foreclosure of the security interests held by [Spanakos], as of the date of default, November 1, 2008, in 6,000,000 Class A "Preferred" shares of stock in Defendant Hawk Systems, Inc., and in voting rights over 30,000,000 Class A "Preferred" shares of stock in Defendant Hawk Systems, Inc. (including all stock acquired in any fashion thereafter) . . . .[64]

According to Spanakos, the Summary Judgment Order in the Derivative Action (discussed below) voided 20 million shares of the Company's stock.[65]  Thus, when the stock he has acquired through litigation is added to the stock he has acquired through other means, Spanakos maintains he controls over 68,721,332 of the Company's less than 75 million outstanding shares, a number that brings him well

---

[63] JX 48.

[64] JX 38.

[65] Trial Tr. (Spanakos) 34:15–35:3, 80:6–18; JX 45; JX 64.

into majority shareholder status.[66] As discussed below, there are several problems with Spanakos' math.

First, to count the shares pledged by Coriaty as security towards Spanakos' majority holdings, I must rewrite the Florida court's Partial Final Judgment. That Order, apparently submitted by Spanakos for the Florida court's approval, expressly references "6,000,000 Class A 'Preferred' shares of stock in Defendant Hawk Systems, Inc., and [] voting rights over 30,000,000 Class A 'Preferred' shares of stock in Defendant Hawk Systems, Inc.."[67] But there are no "Class A Preferred shares of stock in [] Hawk Systems, Inc." with voting rights.[68] Recognizing this, Spanakos would have me amend the Florida court's Partial Final Judgment to substitute "common shares" for "Class A Preferred shares" to account for the fact that the reverse merger between Hawk Biometric and EXGI converted "Class A Preferred" stock into common stock of Hawk Systems.[69] Of course, Spanakos has made no effort to have the Florida court amend its own Order to reflect that change

---

[66] Pet'r Opening Post-Trial Br. 37.

[67] JX 38. As noted, the Order, as entered, contains several handwritten edits from the presiding judge, suggesting he was not the original scrivener.

[68] JX 59 (Certificate of Designation for Explorations Group, Inc.) § 1.7 ("The Preferred Stock shall have no voting rights.").

[69] *Id.*

(if justified). That alone, in my view, is fatal to Spanakos' claim here. This court does not monkey with orders from other courts.[70]

Second, there is no evidence in this record that Spanakos has taken steps in Florida to execute on the Partial Final Judgment.[71] And it is not clear what that process would yield by way of recovery should Spanakos initiate it. For instance, the Partial Final Judgment was entered against Hawk Systems and Hawk Biometrics, not Coriaty. While the Company promised to pay the Coriaty debt, it did not purport to take control of the collateral Coriaty pledged as security for the debt or to secure it in the event of default.[72] Thus, it would appear Spanakos must take steps against Coriaty personally to expand the scope of the Partial Final Judgment and then to execute, or "foreclos[e]," on the pledged stock before he can call it his own.[73] During

---

[70] At best, Spanakos is asking the Court to interpret a foreign court's order with no context; at worst, he is asking the Court to rewrite the order to suit his goals in this litigation. Either way, he has provided an insufficient evidentiary record from which I could even begin to engage in the blue-penciling he would have me do here (assuming I was inclined even to try, which I am not). The Derivative Action and the Coriaty Action are both still pending, and yet Spanakos has provided no explanation of why he has not pursued either clarification or enforcement of the Orders in question in those courts.

[71] PTO ¶ 15; JX 25; JX 53.

[72] That Spanakos has not attempted to execute on the Partial Final Judgment is perplexing given that he pursued that process to secure Sebastiano's Hawk Systems stock in connection with the judgment entered in the Sebastiano Action. PTO ¶ 15; JX 25; JX 53.

[73] *See* Fla. R. Civ. P. 1.550–1.1.590. Of course, I can only surmise what Spanakos' next steps would be with respect to the Partial Final Judgment. The Order itself is not explicit on the point, and I am by no means an expert on Florida law with respect to the execution of judgments.

the course of this process, one would expect that discovery in aid of execution will uncover precisely what shares Coriaty holds and whether he or the Company have engaged in fraudulent transfers of stock to avoid their obligations to Spanakos.[74]

Finally, the record suggests that at least some of the shares to which Spanakos claims he is entitled are now in the possession of shareholders other than Coriaty.[75] Thus, in order to provide the definitive declarations Spanakos seeks here, the Court would have to unwind transactions whereby potentially *bona fide* purchasers, with

---

[74] JX 23; Trial Tr. (Spanakos) 95:18–96:5 (testifying that Hawk Systems issued Coriaty another 8.8 million shares). Spanakos has suggested this Court should declare that any transfers of Hawk Systems stock made by Coriaty or the Company after the Company entered into the Coriaty Security Agreement were fraudulent transfers. Pet'r Post-Trial Reply Br. 7. Spanakos has not explained, however, how the Court could adjudicate that claim when he has not asserted it in his Petition and has not named Coriaty as a party in this litigation. Spanakos also asks that I impose a constructive trust to hold the shares that are the subject of the Partial Final Judgment. Even if I were inclined to rewrite the Partial Final Judgment, as Spanakos requests, to convert the nature of the securities that are addressed in that Order, Spanakos' prayer for a constructive trust would still fail because he has not named Coriaty as a party to this action. *See Teachers Ret. Sys. of Louisiana v. Aidinoff*, 900 A.2d 654, 670 (Del. Ch. 2006) ("[T]his court cannot impose the remedy of a constructive trust against a party unless that party is properly subject to an order of relief under a recognized cause of action.").

[75] Trial Tr. (Spanakos) 58:3–4 ("But they recognized millions and millions of shares of people where they were gifted stock."); 64:21–24 ("They don't want me to see and the investors to see what the discussions were made on how you can justify giving away millions and millions of shares of stock when a collateralized note is on it . . . ."); JX 17 (list of series B preferred holders that received Hawk Systems common stock after reverse merger); JX 21 (stock transaction list); Trial Tr. (Spanakos) 92:19–93:9 (testifying that Coriaty swapped with Sebastiano millions of shares of stock); 94:11–13; 94:23–95:8 (testifying that Coriaty gave or sold shares of stock from his account to friends, family or to Burt Rhodes who sold them on the side); JX 24 (letter to Olde Monmouth issuing opinion letters for Coriaty to sell restricted shares).

21

no knowledge of Coriaty's debt obligations, acquired shares that were subject to the Partial Final Judgment. Setting aside the due process concerns that flow from the absence of affected parties, there is no credible evidence in the trial record that would allow the Court even to begin that process.

## 2. The Summary Judgment Order

As with Partial Final Judgment, the Summary Judgment Order provides no pathway for Spanakos to reach majority stockholder status. According to Spanakos, the Summary Judgment voids over 20 million shares the Company improperly issued for little or no consideration, thereby reducing outstanding and issued Hawk Systems stock from 95 million to 75 million shares. But the Summary Judgment Order speaks only to liability on the unjust enrichment claim and explicitly reserves entry of final judgment on damages (or other remedies) until the court decides a motion for the entry of final judgment.[76] Spanakos has failed to present any competent evidence to support his contention that the Florida court intended to void the Company's issuance of 20 million shares, much less evidence of exactly which 20 million shares were voided. In the absence of evidence that these issues were actually adjudicated in Florida, Spanakos' claim here, once again, would require this

---

[76] JX 45. Even if the Florida court were to enter a final judgment on damages, it appears that judgment would be limited to Spanakos' request for compensatory damages, not for cancellation or rescission of the allegedly improperly issued stock. JX 33 at 81, 89.

Court to modify the order of another court or determine the *bona fides* of stock ownership in a manner that would affect the interests of Hawk Systems stockholders who are not before the Court.

**\*\*\*\*\*\*\*\*\*\***

Because I cannot conclude on this record that Spanakos is the majority stockholder of Hawk Systems, I cannot conclude the actions he took through the 2015 Written Consent, the 2018 Stockholder Consent or the 2018 Director Consent were valid corporate acts. Consequently, I cannot declare that Spanakos is Hawk Systems' lone director or its CEO.

## B. Petitioner Has Not Provided Sufficient Guidance to Allow the Court to Compel an Election

As an alternative to declaring him majority stockholder and validly elected sole director and CEO, Spanakos asks the Court to compel an election of a new board. Section 223(a) of the Delaware General Corporation Law provides that when a corporation has no directors in office, the Court may compel an election in accordance with Section 211.[77] Section 211(c), in turn, authorizes the Court to

> summarily order a meeting [to elect directors] upon the application of any stockholder . . . . The shares of stock represented at such meeting, either in person or by proxy, and entitled to vote thereat, shall constitute a quorum for the purpose of such meeting, notwithstanding any provision of the certificate of incorporation or bylaws to the contrary. The Court of Chancery may issue such orders as may be appropriate,

---

[77] 8 *Del. C.* § 223(a).

23

including . . . orders designating the time and place of such meeting, the record date or dates for determination of stockholders entitled to notice of the meeting and to vote threat, and the form of notice of such meeting.[78]

Thus, the statutes together permit Spanakos, as a stockholder (whether majority or minority), to call for an election, and both statutes authorize the Court to compel one. And, if the Court decides to compel an election, it may, in its discretion, specify the details and logistics, including the date, time and location of the election, the record date for the meeting and who may vote.[79]

The problem here, as Spanakos recognizes, is that the Company's stock ledger is in shambles, effectively preventing the Court from exercising its discretion to resolve by any logical or lawful means the answers to important election issues: Who will send notice? To whom will the notice go? Who will count the votes?[80] The

---

[78] 8 *Del. C.* § 211(c).

[79] *Byrne v. Lord*, 1995 WL 684868, at *8 (Del. Ch. Nov. 9, 1995) (citing 8 *Del. C.* § 227) ("[T]he court may designate the time, place and record date for the meeting, as well as determine the rights and powers of individuals who claim to be stockholders."); *Tweedy, Browne & Knapp v. Cambridge Fund, Inc.*, 318 A.2d 635, 637 (Del. Ch. 1974) ("[T]he Court has a duty to make sure that such a meeting and election take place as promptly as possible, and normally this can only be guaranteed by the entry of an order fixing a definite date for the event to take place."); *Savin Bus. Machines Corp. v. Rapifax Corp.*, 375 A.2d 469, 472 (Del. Ch. 1977) ("Thus, while the right of a shareholder to compel an annual meeting under § 211 may be virtually absolute, he has no similar right to insist that it be held at any particular time. This latter is a decision for the Court.").

[80] Respondents argue Spanakos and the Court are stuck with the stock ledger as the definitive word on Hawk Systems' capital structure and stock ownership. Resp't Post-Trial Answering Br. 1 (arguing the Company's stock ledger "is controlling"). That is not so, as a matter of law, when the Court is satisfied the stock ledger is inaccurate. *See Boris*

24

statutes provide no guidance on these issues in circumstances like this. And, for his part, Spanakos has failed to provide feasible solutions. His only suggestion, articulated for the first time in post-trial argument, is that I appoint an election custodian who would: (1) require stockholders to come forward and prove their *bona fide* stock ownership so the custodian can correct the stock ledger; and then (2) allow only those stockholders who have carried that burden to cast a vote.[81] Spanakos acknowledges there is no authority for this process in the DGCL or in our common law and also agrees, if I impose these conditions, I would sanction a scenario whereby a *bona fide* Hawk Systems stockholder who chose not to participate in the court-ordered election would likely lose her shares.[82] He also acknowledges that the Court would be ceding to a non-judicial officer the responsibility of reconstituting the Company's stock ledger.[83] As noted, I appreciate and understand Spanakos' frustration. But that is no reason to foist his ill-conceived plan for a court-ordered election on Hawk Systems and its innocent stockholders.

---

*v. Schaheen*, 2013 WL 6331287, at *3 (Del. Ch. Dec. 2, 2013). With that said, Respondents are correct that Spanakos bears the burden of proving the correct state of stock ownership to the extent he challenges the accuracy of the Company's stock ledger. *Id.* at *13.

[81] Pet'r Post-Trial Opening Br. 26; Pet'r Post-Trial Reply Br. 14–19; Tr. Post-Trial Arg. 5:2–24:8.

[82] *Id.*

[83] *But see Boris*, 2013 WL 6331287, at *3 ("Whether the [stock ledger] is otherwise inaccurate and incomplete . . . is a question **the Court** must answer.") (emphasis added).

Given that an orderly election cannot be held until the Company's stock ledger is sorted out, and that cannot occur until, at the least, the Partial Final Judgment and Summary Judgment Order are clarified and enforced, Spanakos' request that the Court compel an election of directors is unworkable.

## C. The Company Was Not Properly Revived

Spanakos purports to have revived the Company from void status by paying its delinquent franchise taxes and obtaining a certificate for revival of the Company's charter from the State of Delaware under 8 *Del. C.* § 312.  Unfortunately, under the circumstances, Spanakos lacked authority to take that action on behalf of the Company.

Under Section 312(c), a certificate of revival "may be procured as authorized by the board of directors or members of the governing body of the corporation in accordance with subsection (h) . . . ."[84]  Subsection (h), in turn, clarifies that

> subsection (c) . . . shall be satisfied if a majority of the directors or members of the governing body then in office, even though less than a quorum, or the sole director or member of the governing body then in office, authorizes the revival of the certificate of incorporation of the corporation and the filing of the certificate required by subsection (c) of this section.[85]

---

[84] 8 *Del. C.* § 312(c).

[85] 8 *Del. C.* § 312(h).

26

In other words, a majority of the board of Hawk Systems, as it existed on the date of delinquency, or the sole director in office as of that date, could have authorized the revival of Hawk Systems. But neither circumstance was satisfied here. Spanakos acted alone, so there is no dispute that a majority of the Hawk Systems board did not authorize the revival. And Spanakos was not the sole director then in office at the time of the delinquency, so his lone act on behalf of the Company as purported board member likewise was ineffective.[86]

By the terms of the statute, a stockholder *qua* stockholder cannot revive a company by his own direct action, regardless of his status as a minority or majority holder.[87] Nevertheless, where, as here, no directors are available to revive the company, Section 312 authorizes stockholders to hold a meeting to elect a full board of directors that may then authorize the revival.[88] In that regard, a stockholder may call a meeting upon notice given in accordance with Section 222,[89] or he may seek

---

[86] Trial Tr. (Spanakos) 101:23–24; JX 30.

[87] *See Clabault v. Caribbean Select, Inc.*, 805 A.2d 913, 914 (Del. Ch. 2002), *aff'd*, 846 A.2d 237 (Del. 2003) (noting plaintiff was not able to revive company as stockholder (as opposed to as director) at the time the certificate of incorporation expired).

[88] 8 *Del. C.* § 312(h).

[89] *Id.*

the authority of the Court to call a meeting of stockholders under Section 211.[90] That, then, brings us full circle to Spanakos' dilemma, unresolved on this trial record. The stock ledger is not reliable, he has not demonstrated how to fix it and he has not proven that Orders from the Florida courts have given him majority control of the Company. Consequently, the Company has not been, and on this record cannot be, revived.

## III. CONCLUSION

For the foregoing reasons, judgment is entered for Respondents. If Petitioner obtains clarification from the Florida courts regarding the meaning and scope of the Partial Final Judgment and/or the Summary Judgment Order, and properly executes on those Orders, he may return to this Court to obtain appropriate relief under Section 225 or Section 223.[91] On the present trial record, however, he has not carried his burden of proof to obtain that relief. The parties shall confer and submit a proposed final judgment within ten (10) days.

---

[90] *Clabault v. Caribbean Select, Inc.*, 805 A.2d 913, 914 (Del. Ch. 2002), *aff'd*, 846 A.2d 237 (Del. 2003).

[91] In this regard, I note there has been no final adjudication with respect to the scope, meaning and effect of the Partial Final Judgment or the Summary Judgment Order because I am not yet in a position to make those determinations without further guidance from, or proceedings before, the Florida courts. Thus, *res judicata* does not apply. *See Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) (stating the elements of *res judicata* including that the claim be finally adjudicated); *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 192 (Del. 2009) (same).